(May 31, 1897.)

# SEARS v. LYDON.

[49 Pac. 122.]

WRIT OF ATTACHMENT—SEIZURE OF CHATTELS UNDER.—An officer, to justify the seizure of chattels under a writ of attachment against a stranger to such writ, must show a valid writ by showing the existence of all of the jurisdictional facts that must exist before the writ can issue, and he must do this by the record, or duly authenticated copy thereof of the attachment suit.

SAME—TO JUSTIFY A SALE UNDER EXECUTION.—To justify a sale under an execution, as against a stranger to the writ, an officer seeking to justify thereunder must prove a valid judgment.

MEASURE OF DAMAGES—STOCK OF MERCHANDISE—HOW ESTIMATED.— When a stock of merchandise is sued for, the measure of damage is the cost of such stock in like quantity at the place of the alleged trespass, if purchasable there in such quantity; otherwise the wholesale price of such goods on the nearest markets where they can be purchased in like quantity with necessary cost of transportation added.

HOW OFFICER MAY JUSTIFY.—Although an officer cannot fully justify a seizure under a writ of attachment or execution, valid on its face as against a stranger to such writ, without proving the jurisdictional facts upon which such writ issued, under section 3021 of the Revised Statutes, by showing absence of an actual and continued change of possession, yet he may, in such case, to protect himself against exemplary damages, show that the chattels seized by him under such writ were recently in possession of the defendant to the writ, and, in connection therewith, he may also show a lack of change of possession, but such showing will only protect him from exemplary damages, when he fails to prove the jurisdictional facts necessary to the issuance of a valid writ; he is permitted to make this showing to prove his good faith in making the seizure.

EVIDENCE PROVING FRAUD.—Circumstances are admissible to prove fraud, *ex necessitate*, that would not be admissible in ordinary cases.

(Syllabus by the court.)

APPEAL from District Court, Nez Perces County.

James W. Reid, for Appellant.

This case involves the validity of a voluntary conveyance by one brother to another, with the alleged intention of hindering, delaying and defrauding creditors. Such conveyances have al-

ways been regarded with disfavor by the courts, and statutes against them have received a liberal construction. In suits instituted for the purpose of impeaching transactions on the ground of fraud, specific facts must be alleged, and in what the fraud consists and how it has been effected. (8 Am. & Eng. Ency. of Law, 653, and authorities there cited; *Harkness v. Smith,* 3 Idaho, 221, 28 Pac. 423; *Ferbroche v. Martin,* 3 Idaho, 573, 32 Pac. 252.)

James E. Babb, for Respondent.

This was an action brought by Frank D. Sears against Harry Lydon, for damages for taking from possession of plaintiff and converting to his own use personal property, consisting of a stock of harness and saddlery of the plaintiff. Defendant's answer put the complaint at issue, and then in two separate defenses in different forms averred in substance that at all times in controversy one Charles F. Sears, and not the plaintiff, was the owner of the property in question; that one Mary E. Goddard began an action in the district court, in Shoshone county, Idaho, against said C. F. Sears and one H. P. Barger, partners as Barger & Sears, to recover judgment on two notes of said Barger & Sears; that a summons was duly issued in the action the day it was begun, and that on that day a writ of attachment was duly issued in the action and directed to the defendant as sheriff of Nez Perces county. That on the twenty-eighth day of August, 1895, the defendant received said writ of attachment and delivered a true copy of said writ of attachment to the plaintiff in this action, in whose possession the property described in said complaint then was. The plaintiff, introduced as a witness, made out his case most clearly and conclusively. His case was, in short, this: That A. Cohen and C. F. Sears began business at Lewiston as partners as The Lewiston Harness and Saddle Company. Neither of the partners resided at Lewiston, and plaintiff was employed by them as manager of the business. Later, C. F. Sears bought out A. Cohen, the other partner, when the name of the business was changed from Lewiston Harness and Saddle Company to Sears Saddlery Company, and plaintiff continued as the manager of the business on a salary. On May 31, 1895, there was due and

unpaid to plaintiff for salary $987.59, and he took a note for that amount and a mortgage on the merchandise in question to secure it. Plaintiff then, to avoid expense of a foreclosure, attempted to, and did, buy the mortgaged stock of merchandise from C. F. Sears. He received a bill of sale, and the same was recorded in recorder's office in Nez Perces county, August 10, 1895. The consideration of the bill of sale was $1,796.87, consisting of $1,076.87 due on wages, being the amount secured by chattel mortgage and the interest, and wages accruing since, $500 on account of having paid as surety a note of C. F. Sears for that amount, and his note of $220 balance of purchase price. There is not even a suggestion in the evidence impeaching any of that consideration for which plaintiff received that bill of sale. A sheriff, to defend action for damages for seizing under writ of attachment personal property in the possession of one not a defendant in the writ, must prove all the conditions precedent to the issue of the writ, as the filing of complaint, issue of summons, filing of affidavit and bond, and cannot rely upon the recitals of those matters in the writ as proof thereof. He might do so if he took the property from possession of a defendant in the writ, but when taken from a stranger the rule is different. If he do not prove those matters, a sale good between the parties is good as to him, and he has no right to an inquiry into circumstances which would avoid a transfer as to creditors. (*Thornburg v. Hand,* 7 Cal. 554.) The reason for the distinction between cases where the writ is levied upon property in possession of the defendant in the writ and where the property is found in possession of a stranger to the writ is found in the fact that the defendant may, if the attachment has been improvidently issued, move to have it quashed or have an action upon the undertaking while a third party, a stranger to the writ and record, could not be heard for such purpose; hence the justice of requiring an officer who takes property not from the defendant against whom the writ runs, but from the possession of a stranger, whom the law presumes to own it, to show not only his writ, but that it issued regularly upon a valid demand against the defendant named in such writ. (*Paige v. O'Neal,* 12 Cal. 483, 492; *Oberfelder v. Kavanaugh,* 21 Neb. 483, 32 N. W. 295;

*Williams v. Eikenberry,* 22 Neb. 210, 34 N. W. 373; *Paxton v. Moravek,* 31 Neb. 305, 47 N. W. 919; *Bartlett v. Cheesebrough,* 32 Neb. 339, 49 N. W. 360; *Winchell v. McKinzie,* 35 Neb. 813, 53 N. W. 975.)  The existence of a judgment in the county of its rendition, and an execution thereon to the sheriff of another county, affords no presumption that the judgment was docketed in the latter county so as to render the execution valid.  (Best on Evidence, sec. 300; *United States v. Ross,* 92 U. S. 281; *Befay v. Wheeler,* 84 Wis. 135, 142, 53 N. W. 1121; *Knox v. Marshal,* 19 Cal. 622; *Kane v. Desmond,* 63 Cal. 465.)

QUARLES, J.—On the twenty-third day of August, 1895, a writ of attachment was issued out of the district court of the first judicial district of Idaho, in and for Shoshone county, in an action there commenced by Mary E. Goddard, as plaintiff, against H. P. Barger and C. F. Sears, as defendants, in favor of said plaintiff and against the said defendants, to secure a debt alleged to be due to said plaintiff from the said defendants, in the sum of $1,127, which writ of attachment was directed to the sheriff of Nez Perces county; and the same was on the twenty-eighth day of August, 1895, placed in the hands of the appellant, as sheriff of Nez Perces county, who on the same day seized under said attachment a stock of merchandise, consisting of harness, saddles, bridle and such goods as are usually kept in a saddle and harness store.  Afterward said stock of merchandise was sold under an execution that issued in the aforesaid action, and sold by the appellant, as sheriff, at execution sale.  On October 29, 1895, the respondent, as plaintiff, commenced this action against the appellant, as defendant, to recover damages for the alleged conversion of said stock of merchandise.  The defendant answered, and sought to justify under said attachment and execution; denied plaintiff's ownership; alleged the property in question to have been, at the time of the seizure thereof under said attachment, owned by C. F. Sears, one of the defendants in said attachment; and averred specific acts tending to show that C. F. Sears had fraudulently attempted to transfer said stock of merchandise to the plaintiff a few days prior to said levy, but alleged that there had been

no actual or continued change of possession of the said stock of merchandise between plaintiff and said C. F. Sears. The cause was tried before a jury on the second day of June, 1896, and a verdict returned in favor of the plaintiff for the sum of $1,700.

In his complaint the plaintiff avers the property in question to have been at the time of the seizure of the value of $1,600, and says that by reason of said conversion he was damaged in the sum of $2,500, for which he demands judgment. The evidence adduced on the trial is set forth at length in the transcript, and from the evidence many facts tending to show fraud in the transaction between the plaintiff and C. F. Sears appear. In fact, we find in this transaction many of the earmarks of fraud, which in law vitiates such transactions. The defendant's justification failed for the reason that he failed to prove the jurisdictional facts authorizing the issuance of the writ of attachment under which he seized the property in question. As between himself and the defendants to the writ, the writ itself would be sufficient, but as between the defendant and the plaintiff in this action, the latter being a stranger to the writ, it was necessary for the defendant, in order to justify his seizure under said writ of attachment, to go back of the writ, and show the existence of the necessary jurisdictional facts, to wit, that complaint was filed, summons issued, proper affidavit for attachment made and filed and sufficient undertaking on attachment executed and approved, writ issued, and levy and return of the writ; and all these facts could only be shown by the record, or duly authenticated copies thereof. Then, to protect himself against said sale under execution, the defendant should have proved the judgment in the action upon which the execution was issued, by producing the judgment-roll, or duly authenticated copy thereof. Failing to produce such evidence, his seizure and sale of the property in question are not justified. Still, we think that the defendant, on the trial, should have been permitted to prove any fact tending to show that C. F. Sears had been, prior to the levy of the attachment, the owner and in possession of the property seized, and that the transfer to the plaintiff was fraudulent. He could do this in mitigation of damages, and as a defense to punitive damages.

An officer who seizes, under a writ valid on its face, property recently owned by the defendant to such writ may show such fact; and he may also show any facts tending to show want of an actual and continued change of possession of said property between the defendant in the attachment and a third party claiming to have purchased such property, for the purpose of showing his good faith, and in mitigation of damages. In the case at bar the plaintiff is a brother of C. F. Sears, one of the defendants to the attachment. C. F. Sears owned the stock of goods seized, and was doing business with the same until a few days prior to the seizure of the goods under the attachment. Plaintiff had been, as he himself testifies, managing the business, and, in his own language, "ran the business" from June 30, 1893, until the seizure complained of; from June 30, 1893, to April 19, 1894, for C. F. Sears and A. Cohen, under the name of the Lewiston Harness and Saddle Company; and from April 19, 1894, up to the 10th of August, 1895, as manager for his brother C. F. Sears, conducting the business under the name of the Sears Saddlery Company. Plaintiff claimed to have bought the entire stock of goods for a debt due himself for wages earned during the time he had been manager of the business, and an alleged debt from C. F. Sears to A. Cohen, for which he was surety, in the sum of $500; giving his note to said C. F. Sears for $220, alleged balance of purchase price. It also appears in the evidence that in the month of August, 1895, said C. F. Sears and the firm of Barger & Sears, of which he was a member, were in failing circumstances, and that said C. F. Sears was then transferring different parcels of property to relatives of his, under suspicious circumstances. The theory of the defense, and the one upon which the levy was evidently made, was that there had not been such a transfer and change of possession of the chattels in question, between C. F. Sears and the plaintiff, as would satisfy the statutes of Idaho relating to similar transactions, and, for that reason, that the alleged sale to plaintiff was void as to the attaching creditor, Goddard. But, to sustain this theory and defense, it was necessary for the defendant to establish the relation of creditor and debtor between the plaintiff in the said attachment and said C. F. Sears, in the manner hereinbefore suggested.

And, if this had been done, then the defendant would have presented a complete defense to the action by showing that there had been no actual and continued change of possession as required by section 3021 of the Revised Statutes of Idaho, as construed by this court in *Harkness v. Smith,* 3 Idaho, 221, 28 Pac. 423. The instructions of the court were contradictory, and therefore erroneous, submitting at one time the question of fraud for want of change of possession, and taking at another time from the jury the same question, and the jury were doubtless confused by such instructions.

Under the showing made by the defendant, he was not liable for exemplary damages. The measure of damages in the case at bar is correctly stated by 3 Sutherland on Damages, second edition, section 1098, in the following language: "Where a quantity of merchandise is sued for, the retail price would be unjust; for the merchant, in fixing that price, takes into consideration, not only the first cost of the goods, but store rent, clerk hire, insurance and probable amout of bad debts, and adds to all these a percentage or profit. This must be understood of a considerable quantity, not of a single article. The owner must be entitled to recover at such rate as he would have to pay in the nearest market where a like quantity could be bought to replace the property taken. Added to this, no doubt, should be the expense necessarily incurred in getting the property so purchased to the place where the trespass was committed." This rule was adopted by the supreme court of California in *Nightingale v. Scannell,* 18 Cal. 315. The evidence in the case failed to show what were the nearest markets that a like quantity of the goods in question could be purchased in, or the price of similar goods in like quantity on such nearest markets. It was incumbent on plaintiff to have shown what were the nearest markets in which similar goods to those in question could have been purchased, and the market value of same purchased in like quantity on such markets, and this he failed to do. The necessary data from which only the legal measure of plaintiff's damage could be ascertained being absent, the verdict of the jury was unauthorized and against law, for the reason that such damage must be ascertained by the measure of damages recognized by law, and by such measure

only. It is true that the plaintiff, in his testimony, says that he has indicated alongside the items in the inventory (doubtless the one attached to the sheriff's return) "the market value of those items in numerals in Lewiston, Idaho, on the twenty-eighth day of August, 1895." Continuing he says: "I have indicated the price at the wholesale markets, and then there is a percentage of freight added." It cannot be ascertained from the evidence how much the plaintiff "added" for freight, on what market the goods were purchased, at what price they were purchased. It is usual for persons buying goods at wholesale to receive invoices showing the items and prices thereof, and to receive, when they pay freights, expense bills from common carriers showing the freight charges. Plaintiff did not produce invoices from the seller showing the prices, nor did he show that such invoices had never been received, or, if received, that they had been lost or mislaid. Nor did he produce, nor show why he failed to produce, expense bills showing the freights that had been paid on the goods in question. Plaintiff, on redirect examination, testified: "I included within the term 'stock of goods,' as worth $1,796.87, the harness, saddles, bridles, whips, spurs and buggy robes and fixtures, the tools, and everything in and about the harness and saddle business, the book accounts and the notes, and each and every asset of that business—everything that was connected with it." The consideration named in the bill of sale under which the plaintiff claims is $1,796.87. The inventory attached to the sheriff's return shows that the accounts of the business due from divers persons amounted to more than $500. It does not appear in the record how many notes plaintiff had in connection with the business, or their value, and there is no evidence in the record showing the value of said accounts. In the absence of evidence showing the value of said accounts, they are presumed to be of their face value. If the chattels seized were worth, judged by the legal measure laid down above, the full amount alleged in the complaint, to wit, $1,600, then the verdict of the jury is contrary to law, in this: Said verdict is for more than the value alleged in the complaint, and is based in part, at least, upon exemplary damages, to which the plaintiff was not entitled. We think that said verdict embraced, not only what the

jury believed the goods to be worth, but also the value of the
notes and accounts belonging to the business, which is unau-
thorized in law, for the reason that there is no evidence in the
record showing that the defendant collected the notes and ac-
counts, or any part thereof.

The first ground for a new trial mentioned in the appellant's
notice of intention to move for a new trial is not well taken,
for the reason that it was his duty to point out or specify there-
in wherein the evidence was insufficient to justify the verdict
and judgment, which he failed to do.

The court refused to permit the plaintiff to answer questions
showing that he and his brother C. F. Sears, while doing busi-
ness together, had transferred their property to prevent pay-
ing debts, and upon such action the first and second errors as-
signed by the appellant are based.  Such evidence was proper,
and such acts on the part of the plaintiff and the said C. F.
Sears, under whom the plaintiff claimed the goods in question
in this action, if proven, were proper circumstances to be con-
sidered by the jury in determining whether the transfer from
C. F. Sears to plaintiff was an honest or a fraudulent transac-
tion.  If such transfer was made with the intent on the part
of C. F. Sears to evade payment of his debts, and such intent
was known to the plaintiff, then such transfer was void, under
section 3020 of the Revised Statutes, although the said C. F.
Sears may have been indebted to plaintiff, and the plaintiff de-
sired to secure himself.  It is a difficult matter to prove fraud-
ulent acts by direct or positive evidence; hence the law permits
a wider scope; gives the attacking party more latitude in intro-
ducing evidence in cases of fraud than in ordinary cases.  Mr.
Wait, in his work on Fraudulent Conveyances (at section 13),
says: "Direct proof of positive fraud in the various kinds of
covinous alienations which we are to discuss is not, as we shall
presently see, generally attainable, nor is it vitally essential.
The fraudulent conspirators will not be prompted to proclaim
their unlawful intentions from the housetops, or to summon
disinterested parties as witnesses to their nefarious schemes.
The transaction, like a crime, is generally consummated under
cover of darkness, with the safeguards of secrecy thrown about
it.  Hence it must be scrutinized and judged by all the sur-

rounding circumstances of the case. The evidence is almost always circumstantial. Nevertheless, though circumstantial, it produces conviction in the mind often of more force than direct testimony. In such cases, when fraud is in issue, the field of circumstances ought to be very wide. From the nature of the case, it can rarely ever be proved otherwise than by circumstantial evidence. And if the facts and circumstances surrounding the case, and distinctly proven, are such as would lead a reasonable man to the conclusion that fraud in fact existed, this is all the proof which the law requires."

The third error specified consisted in the court sustaining an objection to the following question asked plaintiff by counsel for defendant, viz.: "Well, why were you so careful in the last situation of things, and so careless in the first situation that I have mentioned?" Such question was immaterial, and too much in the nature of argument, and the court properly sustained the objection.

The fourth error specified was based on the action of the trial court in refusing to permit plaintiff, while a witness in his own behalf, to answer this question: "How many saddles did you sell between the 8th and 28th of August?" The action of the court in this regard was proper. The only measure of damages proper in the case, so far as the stock of merchandise in question is concerned, has been stated above; and the measure of damages as to the fixtures and tools could only be based on their value at the time and place of seizure, having due regard to their then condition; and, as to the measure of damages as to the notes and accounts garnisheed, the basis would be the actual amount realized thereon by the defendant, and said question would throw no light on either of those matters.

As to the fifth error assigned, we think the court properly refused to permit the witness Goddard to answer the question as to how much of the indebtedness claimed by her had been paid, as such matter was immaterial, so far as the defendant in this case is concerned, and, if admissible at all, only as rebutting evidence on the part of the plaintiff. The court properly refused to permit the witness Goddard to testify to a conversation between herself and C. F. Sears in May, 1895, in regard

to the title in question, as such conversation would throw no light on the questions involved in the case.

The court erred in refusing to permit the defendant to introduce in evidence certified copies of deed of Barger and Sears to Jesse R. Sears, deed of Charles F. Sears to his sister in law, Maggie Sears, deed of C. F. Sears to his sister in law, Mattie E. Sears, and of declaration of homestead of C. F. Sears, as such documentary evidence showed that said defendants in the attachment under which the seizure in question was made were, a short time prior to the issuance of said attachment and levy thereof, transferring their property to relatives, and such acts, taken in connection with the relation of principal and agent which existed between the plaintiff and C. F. Sears, the fact that they were brothers, and other facts shown, were proper circumstances to be considered by the jury in determining the character of the transfer from C. F. Sears to plaintiff of the goods in question.

Numerous errors are assigned as to the action of the trial court in giving and refusing to give instructions to the jury. Without taking up these specifications of error in detail, we deem it sufficient to say that the court erred in not giving the jury the rules by which they were to measure the damages, as hereinbefore set forth. The court should have instructed the jury as to the liability of the defendant for exemplary damages under the rules above given. It appears that the defendant asked certain instructions, which were refused, and of which refusal he complains. But such instructions requested by the defendant do not appear in the record, and we are unable to say whether they should have been given or not. If defendant desired this court to consider such requests, and the action of the trial court thereon, he should have incorporated the same in his statement on motion for new trial.

The appellant complains that the court erred in refusing to let the jury take with them a certified copy of the writ of attachment under which the seizure was made. Such action of the court was error, as the jury had the right to take said paper, under the provisions of section 4388 of the Revised Statutes, and for the further reason that it was an exhibit attached to defendant's answer, and a part of that pleading, and was

evidence of the good faith with which he made said levy, considered with the other evidence.

The court, on motion, struck out of the defendant's answer certain allegations, properly, we think, for the reason that such matters were evidentiary, and, as respondent in his brief says, "was at any rate, at best, matter of evidence only, and admissible under the other portions of the answer," and under the issue of fraud.

The twenty-fifth and twenty-sixth specifications of error are based upon the action of the lower court in excluding from the evidence the depositions of Frederick Maitland and J. G. Boyd. It does not appear in the record for what reason the said depositions were excluded. By the transcript it appears that a motion had been made to suppress the deposition of Boyd. Whether these depositions were suppressed, or whether excluded for want of notice, or for want of the certificate of the notary taking same, as required by the act of March 6, 1893, we are unable to say; but if there was no such notice, or no certificate to said depositions, the court was probably justified in excluding them; otherwise such action was error.

A careful consideration of the evidence in this case convinces us that, in estimating the damages awarded to the plaintiff, the jury allowed the plaintiff somewhere from $100 to $600 in exemplary damages, and that such action of the jury was against law. The court should have granted the defendant a new trial. The order denying the defendant a new trial, and the judgment in the action are reversed, and the cause remanded for further proceedings consistent with the views herein expressed. Costs of appeal to the appellant.

Sullivan, C. J., and Huston, J., concur.

ON REHEARING.

(June 24, 1897.)

HUSTON, J.—Counsel for the petitioner seems to have an idea that the appellate court, in its consideration of causes presented, is limited to the argument of counsel, either written or oral. The appellate court, in the proper exercise of the

powers conferred upon it by the constitution and the laws, is not only authorized, but is instructed, to do many things "of its own motion." Counsel say in their petition for a rehearing that a "conclusion arrived at without the aid of argument is erroneous." With all deference to the learned counsel, we must insist again that, highly as we esteem the aid of argument by learned counsel, we cannot submit to having our consideration of cases circumscribed thereby. We are admonished by the law we are called upon to administer that, overlooking mere technicalities, we must construe the laws "with a view to effect their objects and to promote justice." Counsel insists that the question of exemplary or punitive damages was not an issue in the case, and that, therefore, the refusal to admit testimony "in mitigation of damages, and as a defense to punitive damages," was not error. This was an action in trover for conversion, not replevin, and the complaint states the value of the property alleged to have been converted at $1,600, and then claims damages in the sum of $2,500. The verdict of the jury was for $1,700. There was no claim for interest in the complaint, and the assumption of counsel that the excess in the verdict over the alleged value in the complaint is for interest is not supported by the record. There is nothing in the instructions of the court in regard to interest. The plaintiff testifies that he valued the stock, including "book accounts and notes, and each and every asset of that business—everything that was connected with it—at $1,796.87." The sheriff's return shows that there were attached book accounts of the value of over $500. What the value of the notes and other assets were, aside from the stock proper, does not appear, nor does it appear what disposition was made of such assets. We must, as we conceive our duty in the premises, decide the case upon the record, uninfluenced by any *post mortem* argument of counsel, and, ignoring mere technical errors, endeavor to do substantial justice between the parties, and we think that the decision already rendered will subserve that end. The petition for rehearing is denied.

Sullivan, C. J., and Quarles, J., concur.