LEON KAPLAN AND WIFE, RENEE M. KAPLAN, TRADING AS TINY TOWN v. CITY OF WINSTON-SALEM,

No. 27

(Filed 26 November 1974)

1. Damages § 4— injury to personalty — measure of damages

　　The measure of damages for injury to personal property is the difference between the market value immediately before and immediately after the injury.

2. Damages § 16— stock of merchandise — instructions on damages

　　The trial court in its instructions stated to the jury the correct rule to govern their determination of the amount of damages in an action against a city to recover for damage done to a stock of merchandise by the infiltration of dust and dirt as a result of sidewalk reconstruction work.

　　Chief Justice BOBBITT not sitting.

　　Justice SHARP dissenting.

　　Justice BRANCH joins in the dissenting opinion.

ON *certiorari* to the Court of Appeals to review its decision filed April 3, 1974 (21 N.C. App. 168, 203 S.E. 2d 653) granting a new trial in this civil action tried in the Superior Court of FORSYTH County at the May 7, 1973 Session before *Collier, J.*

The plaintiffs instituted the action to recover damages to their stock of merchandise caused by the negligent and careless manner in which the agents of the City of Winston-Salem, by the use of air hammers and pressure tools, broke through the concrete sidewalk, causing the dust and debris to filter into the vault under the sidewalk, thence into the three stories of the building in which the goods were stored.

The complaint alleged:

"V. That the agents or employees of the defendant performed the work they were doing in a careless and negligent manner without taking any precautions to prevent the old sidewalk from caving into a vault under said sidewalk, the presence of which vault was known to agents or employees of the defendant. The improper use of the machinery being used by the agents or employees of the defendant, or the failure of the agents or employees of the defendant to support the old sidewalk, or both caused the old sidewalk to drop into the vault with the result that the entire premises was filled with dust, dirt, and debris.

\* \* \* \* \*

"VI. 2. They failed to take proper precautions to avoid the caving in of the sidewalk after inspecting the foundation under said sidewalk when they knew or should have known that said sidewalk was unsupported and would cave in when air hammers or other power machinery were used on it."

The complaint further alleged that the defendant failed to take proper precautions against the spill of dirt and debris into the plaintiffs' building:

"IX. That the merchandise located on the premises had a fair market value prior to the damage of Sixty-Six Thousand Six Hundred Eighty-Four and 07/100 Dollars ($66,684.07). The fair market value of said merchandise after the damage was Eighteen Thousand Three Hundred Thirty-Five Dollars ($18,335.00). Therefore, said merchandise was damaged in the amount of at least Forty-Eight Thousand Dollars ($48,000.00). The plaintiffs suffered a loss of profits as a result of the store being closed entirely for three (3) days in the amount of Nine Hundred Dollars ($900.00). In addition, the plaintiffs were required to pay a total of Six Hundred Fifty-Eight Dollars ($658.00) in connection with cleaning and repairing the premises to restore its usefulness as a retail storeroom."

The defendant, by answer, denied negligence, liability and damages. Both parties introduced evidence.

The jury answered the issue of damages in favor of the plaintiffs awarding $21,752.00. From the judgment entered on

the verdict, the defendant appealed. The Court of Appeals, finding error in the charge on the issue of damages, ordered a new trial on all issues.

*Hudson, Petree, Stockton, Stockton & Robinson by Norwood Robinson and George L. Little, Jr. for plaintiff appellants.*

*Deal, Hutchins and Minor by William K. Davis and Thomas R. Crawford for defendant Appellee.*

HIGGINS, Justice.

The Court of Appeals ordered a new trial on all issues on the assigned ground that the trial court's instructions permitted the jury to consider the retail value of the damaged merchandise in fixing the amount of damages the plaintiffs were entitled to recover. While the court in the charge recited to the jury the respective contentions and claims of the parties respecting the amount of damages resulting from the defendant's acts of negligence and thereafter discussed the various claims of damages, the court gave the jury this mandate:

> "In the event you have reached this issue and find by the greater weight of the evidence that the plaintiffs are entitled to recover of the defendant for damages to the plaintiffs' merchandise, I instruct you that you will take into consideration the description of and the evidence of the damages to the merchandise which the witnesses have given you. You may consider for the purpose of illustrating the testimony of the witnesses the pictures that you have seen of the merchandise and you will award to the plaintiffs, if you award anything on this issue, the amount which you find represents the difference in the reasonable market value of the merchandise before and after it was damaged. The reasonable market value of any article being the amount which, the owner wanting to sell but not having to, would accept for it and the amount which a buyer who wanted the article but didn't have to have it would pay for it in a free, fair trade in which there is no compulsion on either side. In this case, that amount may be anywhere from one cent to forty-nine thousand nine hundred and seven dollars and seven cents.

> "Now, in a case of this type involving the stock of merchandise, you may, in arriving at the fair market value of the items, take into consideration the replacement cost

Kaplan v. City of Winston-Salem

of the items which would be the wholesale price of the goods. You may consider but are not bound by the retail prices of the damaged items because that price would include profits which may or may not be realized and therefore would be a speculative value. In considering the cost of the merchandise to the plaintiff, you may also consider reasonable delivery charges and unpacking expenses involved in the goods or merchandise reaching the stage at which they were at the time that this damage was done to it. In other words, you will try by your verdict to put the plaintiffs in the same position they were in prior to the damage to their merchandise insofar as money can do so. If you reach this issue and decide the plaintiffs are entitled to recover anything as a result of the actionable negligence of the defendant, you will award them the amount you find will fully compensate them for their loss according to the rules I have given you with regard to damages in this kind of a case and you will base your verdict on the evidence in the case."

[1] According to the decided cases in North Carolina, "The measure of damages for injury to personal property is the difference between the market value immediately before the injury and the market value immediately after the injury . . ." 3 Strong N. C. Index 2d, Damages, § 4, p. 171. *Guaranty Co. v. Motor Express,* 220 N.C. 721, 18 S.E. 2d 116. Where the injury is less than total destruction, the measure of damages is the difference between the market value of the article immediately before and immediately after the injury. *Light Co. v. Paul,* 261 N.C. 710, 136 S.E. 2d 103; *Construction Co. v. R. R.,* 185 N.C. 43, 116 S.E. 3.

[2] After comparison and review of the pleadings, the evidence, and the contentions of the parties, we are of the opinion the trial court stated to the jury the correct rule to govern their determination of the amount of damages. In the light of the pleadings, the evidence, the contentions of the parties, and the answers to the issues, we are of the opinion that the jury could not have misunderstood the instructions to the defendant's prejudice.

The decision of the Court of Appeals is reversed. The cause will be remanded to the Superior Court of Forsyth County with the direction that the original judgment entered therein be restored as the final judgment of the court.

Reversed.

Chief Justice BOBBITT not sitting.

Justice SHARP dissenting:

Plaintiffs, retail merchants, instituted this action against defendant City to recover the damage done to the stock of merchandise (toys) by the infiltration of dust and dirt on 10 October 1966 as an incident to sidewalk reconstruction in the vicinity of plaintiffs' retail store. Plaintiffs alleged they were entitled to recover the difference between the market value of the merchandise immediately before and after the damage, loss of profits for three days, and the actual cost of cleaning. Plaintiffs' prayer for relief is damages in the amount of $49,907.07. The jury found that plaintiffs had been damaged by the negligence of defendant in the sum of $21,752.00.

From judgment entered upon the verdict defendant appealed to the Court of Appeals assigning as error (1) the judge's refusal to direct a verdict in favor of defendant on the ground that (a) the City was guilty of no negligence, (b) plaintiffs were guilty of contributory negligence, or (c) the City had no liability because of its governmental immunity; (2) the judge's refusal to submit an issue of plaintiffs' contributory negligence to the jury; (3) the admission in evidence of the retail value of the merchandise, that is, the price at which the merchandise had been marked for sale; and (4) the court's charge on the measure of damages.

The Court of Appeals held that the trial judge was correct in overruling defendant's motion for a directed verdict and in refusing to submit the issue of contributory negligence. However, it ordered a trial *de novo* for errors in the charge on the measure of damages.

The majority opinion of this Court approves the judge's charge upon the measure of damages, reverses the decision of the Court of Appeals ordering a new trial, and orders the reinstatement of the judgment of the Superior Court. To this disposition of the case I dissent on the ground that the judge's charge upon the measure of damages (defendant's assignment of error No. 7) is prejudicial error which entitles defendant to a new trial upon that issue only.

Kaplan v. City of Winston-Salem

In brief summary plaintiffs' evidence with reference to damages tended to show:

In October 1966 the retail price of every item in plaintiffs' store was subject to a fair trade contract, "the fair trade law," and plaintiffs sold it at the price placed upon it at the factory. The wholesale distributor ordinarily gave plaintiffs a 40% discount from the marked price, but on specials the markup could be 50%. Immediately before plaintiffs' stock of goods was covered by cement dust and debris from the destruction of the old sidewalks, the merchandise had a total retail value, as shown by the price tags, of $66,685.07. As itemized by the witness, the retail value of the merchandise in the basement was $8,651.95; on the first floor, $26,405.31; and on the second floor, $31,627.81. Immediately afterward, the damage to the value of the merchandise in the basement was "85% of the retail value"; on the first floor, "75% of the retail value"; and on the second floor, "66-2/3% of the retail value." Translating these percentages into dollars and cents, immediately after the damage the merchandise was worth $18,335.07, a diminution in value of $48,350.07. (Defendant's objections to the foregoing evidence are also brought forward in assignment of error No. 7.)

Plaintiffs' evidence also tended to show that in cleaning up the store and attempting to salvage their merchandise they expended $100 for storage space, $184 for extra help, $325 for paint, $12 for floor cleaning, $37 for cleaning supplies, $65 for photographs, and $154 for advertising a sale—a total of $877. Plaintiffs offered no evidence of lost profits.

Although the challenged portion of the judge's charge with reference to damages is set out in the majority opinion, for convenience, it is repeated here with some emphasis added.

". . . [Y]ou will award to the plaintiffs, if you award anything on this issue, the amount which you find represents the difference in *the reasonable market value* of the merchandise before and after it was damaged. The reasonable market value of any article being the amount which, the owner wanting to sell but not have to, would accept for it and the amount which a buyer who wanted the article but didn't have to have it would pay for it in a free, fair trade in which there is no compulsion on either side. *In this case that amount may be anywhere from one cent to forty-nine thousand, nine hundred and seven dollars and seven cents.*

"Now, in a case of this type involving the stock of merchandise you may, in arriving at the fair market value of the items, take into consideration the replacement cost of the items which would be the wholesale price of the goods. *You may consider but are not bound by the retail prices of the damaged items* because that price would include profits which may or may not be realized and therefore would be a speculative value. In considering the cost of the merchandise to the plaintiff, you may also consider reasonable delivery charges and unpacking expenses involved in the goods or merchandise reaching the stage at which they were at any time that this damage was done to it. In other words, you will try by your verdict to put the plaintiffs in the same position they were in prior to the damage to their merchandise insofar as money can do so. If you reach this issue and decide the plaintiffs are entitled to recover anything as a result of the actionable negligence of the defendant, you will award them the amount you find will fully compensate them for their loss according to the rules I have given you with regard to damages in this kind of a case and you will base your verdict on the evidence in the case."

The foregoing instructions are, in my view, both inadequate and erroneous.

Ordinarily the measure of damages for injury to personal property is the retail value of the property immediately before the damage and immediately thereafter. "But that rule does not apply where the property involved is part of a stock in trade of a business concern." *Whaley v. Crutchfield,* 226 Ark. 921, 926, 294 S.W. 2d 775, 779 (1956). The authorities agree that the value of a stock of goods held for retail sale is the wholesale or replacement cost, "without the profit of resale which enters into the retail value." 1 Sedgwick on Damages, § 248a (9th ed., 1912) ; *Dubiner's Bootery, Inc. v. General Outdoor Advertising Co.,* 200 N.Y. S. 2d 757 (1960) ; *Wehle v. Haviland et al,* 69 N.Y. 448 (1877) ; *Lubin v. Iowa City,* 257 Iowa 383, 131 N.W. 2d 765 (1964) ; *Skaggs Drug Centers, Inc. v. City of Idaho Falls,* 90 Idaho 1, 407 P. 2d 695 (1965).

The rule, which seems to have been almost universally adopted, is well stated in 4 Sutherland, Law of Damages, § 1098 (1916) as follows:

"The retail price of property held for sale is not the standard by which its value is to be determined. Where a quantity

Kaplan v. City of Winston-Salem

of merchandise is sued for, the retail price would be unjust, for the merchant in fixing that price takes into consideration not only the first cost of the goods, but store rent, clerk hire, insurance, and probable amount of bad debts, and adds to all these a percentage of profit. This must be understood of a considerable quantity, not of a single article. The owner must be entitled to recover at such rate as he would have to pay in the nearest market where a like quantity could be bought to replace the property taken; added to this, no doubt, should be the expense necessarily incurred in getting the property so purchased to the place where the trespass was committed. This would make the damages depend upon the value of the property taken at the place where the wrong was done. The rule is thus expressed in some cases, with the addition that the estimate is to be made as of the time the right of action accrued, and compensation for the time required to obtain other property to replace that destroyed." *Accord,* McCormick on Damages, § 44 (1935) ; Dobbs, Remedies, § 5.10 (1973) ; *Sears v. Lydon,* 5 Idaho 358, 49 P. 122 (1897).

A case which parallels this one is *Millison v. Ades of Lexington, Inc.,* 262 Md. 319, 277 A. 2d 579 (MDCA 1971), in which the plaintiff sued to recover for damage to a stock of merchandise ruined by water. As here, the trial judge, over objection, admitted in evidence a compilation of the value of the merchandise based on the retail selling price (price tag) of each item. He then charged the jury that the measure of damages was "the fair market value of the goods" on the date they were damaged and the cost of labor occasioned by the loss, less any salvaged value recovered upon a sale of the damaged goods.

In awarding a new trial upon the issue of damages only, the Maryland Court said, "It is obvious in this case that in the admission of evidence and in his instruction to the jury the trial judge equated 'fair market value of the goods on the date they were destroyed or lost' with the retail selling price as of that date. This was an erroneous conclusion." *Id.* at 323, 277 A. 2d at 582.

*  *  *

"Ades is entitled to recover the reasonable cost of replacing the goods on the shelf. This reasonable cost would include the wholesale cost at the time of the loss, plus any reasonable transportation charges that might be involved and the reasonable value of the labor involved in placing the goods on the shelf . . .

[and] the reasonable value of the labor involved in tabulating the loss and removing the damaged merchandise. . . . On the retrial of damages Ades must spell out with some particularity the net salvage value of the goods after the loss which will be properly deductible from the value otherwise determined. It must also spell out its efforts to mitigate damages. We do not state these criteria as an exclusive measure of damages, but as guidelines to assist the parties and the trial court at the new trial on the issue of damages." *Id.* at 327, 277 A. 2d at 584. *Accord, Chicago Title & Trust Co. v. W. T. Grant Co.*, 2 Ill. App. 3d 483, 275 N.E. 2d 670 (1971). (Proper measure of damages for harm to merchandise due to roof leakage was wholesale price, and not retail price, less salvage value.)

In his charge on the measure of damages Judge Collier should have instructed the jury that the retail price was not the standard for determining the value of plaintiffs' merchandise prior to its damage; that the standard was the replacement or wholesale cost of the goods at the time and place of the injury. Instead he told the jury they could consider both the wholesale and the retail price of the damaged items but were not bound by either; that they could fix plaintiffs' damages "anywhere from one cent to forty-nine thousand, nine hundred and seven dollars and seven cents."

Taking the evidence in the light most favorable to the plaintiffs, and assuming the entire wholesale cost of the merchandise to have been 60% of the retail price (although the evidence is that some of the items had a 50% markup), the court's maximum figure of $49,907.07 exceeded the wholesale cost of the entire stock of goods by $9,869.07! (The markup, 40% of the retail price of $66,685.07, is $26,674.03. The difference between this figure and the retail price is $40,011.00, the wholesale price.) It is my view that plaintiffs should have been required to prove the wholesale or replacement cost of the merchandise without reference to the retail price and that, as here used, such evidence was prejudicial. The court did not instruct the jury that it could consider the retail price of the damaged merchandise only as a basis from which to figure the replacement cost, the limit of defendant's liability for the damaged merchandise itself. *See Lubin v. Iowa City, supra.* On the contrary, as Judge Brock pointed out in his opinion for the Court of Appeals, "The jury was permitted to consider evidence of damage to the retail value of the merchandise without limits upon its applicability. This was error prejudicial to defendant."

In my view, upon the evidence in this case, the jury should have been instructed substantially as follows: For any portion of plaintiffs' stock of goods which was totally destroyed they are entitled to recover the wholesale or replacement cost at the time and place of the loss. For that part of the merchandise which was damaged but not totally destroyed, plaintiffs are entitled to recover the difference between the replacement or wholesale cost of the property immediately before the damage and the fair market or salvage value of the property immediately after the damage. In addition, plaintiffs are entitled to recover the reasonable cost of the labor which was required to clean and restock the store. In determining the fair market value of the damaged merchandise the jury may take into consideration, among other things, any amounts reasonably expended to salvage and sell the damaged property.

For the reasons stated herein I vote to modify and affirm the decision of the Court of Appeals by remanding this case to the Superior Court for a retrial upon the issue of damages alone.

Justice BRANCH joins in this opinion.