SOUTHERN WATCH SUPPLY COMPANY, INC. v. REGAL CHRYSLER-PLYMOUTH, INC. AND CHRYSLER CORPORATION

No. 8526SC772

(Filed 15 July 1986)

1. Negligence § 29.1— theft from car trunk—serial number of car keys given by dealer to telephone caller—evidence of negligence sufficient

There was sufficient evidence of negligence and proximate cause to support a verdict for plaintiff in an action arising from the theft of jewelry from an automobile trunk where the Court of Appeals had previously ruled that plaintiff's forecast of evidence had raised issues of fact for the jury and where

Southern Watch Supply Co. v. Regal Chrysler-Plymouth

there was evidence that the jewelry was stolen from the trunk of plaintiff's salesman's car; the car had an alarm system that would not go off when the trunk was opened with a key but would when even slight pressure was applied to the trunk; defendant's employees serviced the car and the burglar alarm and knew that jewelry was kept in the car; an unknown man telephoned defendant's offices and said that he was calling for the salesman to get serial numbers of the car keys because the salesman had lost his car keys and needed to have new keys made; defendant's employee gave the caller the serial numbers of the keys; a witness later saw a man open the trunk of the salesman's car, apparently with a key, and remove a sample case; the salesman discovered four of the sample cases missing when he returned to the car; and officers ascertained that the trunk had not been pried or forced open.

2. **Evidence §§ 28 and 33.1 — theft from automobile — negligence action — police report — admissible**

The trial court did not err in a negligence action arising from the theft of jewelry from an automobile trunk by admitting into evidence the portion of the official police record called incident/investigation report where the officer who testified about the report did not make the report. The officer who testified was present when the victim was interviewed, the car examined, the car's burglar system tested, and the remaining sample case examined; the officer testified that what was in the report was exactly what he heard; the report was not received as evidence that the statements contained therein were true but for the purpose of showing that a report was made; everything of consequence in the report was established by other testimony to which defendant did not object; and the evidence was admissible as substantive evidence under the excited utterance exception to the hearsay rule. N.C.G.S. § 8C-1, Rule 801 and Rule 803(2).

3. **Evidence § 29; Damages § 13 — negligence action — list of stolen jewelry — admissible**

The trial court did not err in a negligence action arising from the theft of jewelry from an automobile by admitting an exhibit which purported to list all the articles of jewelry that were stolen and their wholesale prices. It is no basis for objection that the list was made after the incident; the information was relevant and material; the exhibit's foundation and authentication were sufficient; evidence to the same effect was introduced without objection; and arguments concerning the manner in which the exhibit was made went to its weight rather than its admissibility.

4. **Damages § 13.3 — stolen jewelry — list of wholesale prices — evidence of damages**

In a negligence action arising from the theft of jewelry from an automobile, an exhibit prepared by plaintiff which listed all the articles of jewelry stolen and their wholesale prices but did not mention the words "fair market value" provided evidence of damages; it is not the law that evidence not couched in the terminology of fair market value is necessarily without effect in proving damages.

Chief Judge HEDRICK dissenting.

APPEAL by defendant Regal Chrysler-Plymouth, Inc. from *Downs, Judge.* Judgment entered 27 February 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 9 December 1985.

In suing plaintiff automobile dealer for the value of jewelry stolen from the locked car of one of its salesmen plaintiff alleged that the theft was facilitated by an employee of defendant negligently telling an unidentified telephone caller the serial numbers of the car keys. After discovery was completed defendant's motion for summary judgment was granted, apparently upon the theory that the projected proof raised no genuine issues of fact as to defendant's negligence and causation. Upon appeal we reversed, holding that plaintiff's forecast of evidence raised jury questions on both issues. *Southern Watch Supply Co. v. Regal Chrysler-Plymouth*, 69 N.C. App. 164, 316 S.E. 2d 318, *disc. rev. denied*, 312 N.C. 496, 322 S.E. 2d 560 (1984). In the trial that followed the jury found for its verdict that plaintiff was damaged in the amount of $59,488.31 by defendant's negligence and judgment was entered thereon. Pertinent to defendant's appeal the evidence presented was to the following effect:

In 1980 the plaintiff, a seller of jewelry at wholesale since 1931, employed Paul E. Yandle as a traveling salesman to solicit orders from various retail jewelry stores situated in this state. Yandle had been selling jewelry for plaintiff for about 35 years, and in doing his work he used his own car and jewelry samples that plaintiff supplied at the beginning of each sales season. The sample jewelry filled five leather cases or bags that Yandle kept in the trunk of his automobile. The car was equipped with a burglar alarm system that would not go off when the trunk was opened with a key, but would when even slight force was applied to the trunk; once at Yandle's home it went off when a neighbor's child hit the trunk with a ball. When calling on a customer store Yandle would take only one or two sample cases into the store and would leave the others in the trunk of the car. Defendant's employees had serviced Yandle's cars during the preceding twenty years and knew that he kept jewelry in the car. During that time they periodically checked and serviced the burglar alarm system, and each time Yandle traded cars they took the burglar alarm system from the old car and installed it in the new one. In 1980 Yandle was using a Chrysler that he bought from defendant

in 1978. The car had two sets of keys, neither of which had ever been lost, and Yandle carried both sets with him all the time. A locksmith that knows the make and model of a car and the serial numbers of its keys and that has a key code book, as certain approved locksmiths do, and knows how to decipher the code can duplicate the keys in a few minutes without seeing the car; but without that information a locksmith has to go to the vehicle and make impressions of the locks with tools designed for that purpose.

On 21 February 1980 while Yandle was calling on jewelry stores in Lenoir, an unknown man telephoned the office of defendant in Charlotte and told an employee that he was calling for Yandle from Hickory and that Yandle had lost his car keys and needed the serial numbers in order to have new keys made with which to get into his car. The employee looked up the serial numbers and gave them to the caller. About 11:15 the next morning, while Yandle was calling on a jewelry store in Hickory and his car was parked in the mall parking lot nearby, an unidentified man opened the trunk of the car and stole four sample cases of jewelry worth $59,488.31. Though unaware of it at the time Mrs. Margaret White, who had been shopping in another nearby store, saw the theft committed. While returning to her car in the parking lot she saw a man hurry by her, stop at a Chrysler automobile later identified as Yandle's, open the trunk in one swift movement, apparently with a key, and remove one of the four leather sample cases or bags that almost filled the trunk and set it on the ground. By then she was at her own car, saw and heard nothing more, and gave the incident no further thought until the next day when she read about the theft in the newspaper. She then reported what she had seen to the police and described the man involved as being quite different from Yandle, who she saw for the first time at the police station later. Yandle returned to his car a few minutes after the theft occurred, noticed the missing sample cases, called the police, and several officers were on the scene shortly thereafter. The officers checked Yandle's car, including the burglar alarm system and the one jewelry sample case that Yandle had left, and ascertained that the trunk of the car had not been pried or forced open. Continuing their investigation they later took statements from Yandle, Mrs. White, a locksmith, and several employees of defendant, one of whom admitted talking on

the telephone with the unidentified caller and giving him the serial numbers of Yandle's car keys. But the investigation has not led to the identification of the thief or the recovery of any of the stolen jewelry. Paul Yandle died in September 1982, three months before the summary judgment hearing, and no deposition or other evidence from him was presented either at the hearing or at the trial.

*Levine and Levine, by Miles S. Levine and J. Christopher Oates, for plaintiff appellee.*

*Wardlow, Knox, Knox, Freeman & Scofield, by John S. Freeman, John B. Yorke and Mark T. Sumwalt, for defendant appellant.*

PHILLIPS, Judge.

[1] The only questions presented by defendant's appeal are whether the court erred in receiving into evidence two exhibits offered by the plaintiff and in ruling that the evidence is sufficient to warrant and support the verdict. In our opinion the court erred in neither respect. As to the sufficiency of the evidence, defendant's contentions that negligence and proximate cause have not been proven require no discussion, because when this case was here before, *Southern Watch Supply Co. v. Regal Chrysler-Plymouth*, 69 N.C. App. 164, 316 S.E. 2d 318, *disc. rev. denied*, 312 N.C. 496, 322 S.E. 2d 560 (1984), we held that plaintiff's forecast of evidence on the negligence and proximate cause issues raised issues of fact for a jury to determine and substantially the same evidence was presented at trial. *Johnson v. Southern Railway Co.*, 257 N.C. 712, 127 S.E. 2d 521 (1962). Even if those issues had not been ruled on earlier it is clear to us that the evidence above stated tends to show that defendant was negligent and that plaintiff's loss proximately resulted therefrom. Defendant's contention that the verdict as to plaintiff's damages is unsupported by evidence—an issue not raised by the former appeal—will be discussed following our ruling on the admissibility of Plaintiff's Exhibit 7, which concerns the value of the stolen jewelry.

[2] The first exhibit that defendant contends was erroneously received into evidence, Plaintiff's Exhibit 2, consists of the first two pages of the 49-page official record of the Hickory Police Department's investigation of the jewelry theft here involved. The two pages, entitled Incident/Investigation Report and dated 2-22-80,

state that at 11:29 a.m. a report was received from Paul Yandle that his Chrysler automobile parked in the Union Square East Mall parking lot had been broken and entered a few minutes earlier and some jewelry stolen therefrom. In addition to data about Yandle, his employer, the car, the place, and the missing articles, the report states that it was submitted by Officer S. L. Rhyne at 4:30 p.m. that day and that:

> On 2-22-80 at 1130 hours Officer Rhyne met with Mr. Paul Yandle at Union Square East Mall parking lot in reference to a breaking and entering of vehicle and larceny from vehicle. Mr. Yandle advised this officer that he parked his vehicle at 1100 hours 2-22-80 in the East Lot of Union Square. At [about] 1120 hours Mr. Yandle stated that he returned to his vehicle to get a sample case out of his trunk. Mr. Yandle advised when he opened the trunk of the vehicle that (4) four sample jewelry cases of assorted jewelry (see itemized list) were missing. Missing were (1) one blue case and (3) brown cases all containing jewelry. Value stolen is listed at $57,338.86 as of Fall 1979 price list.
>
> H.P.D. Evidence Technicians was (sic) called to the scene to process evidence as was (sic) Detectives Wiles and Hunt.
>
> There are no suspects at this time.
>
> Mr. Yandle advised that the vehicle trunk has an alarm, however, the alarm was not set off at the time of the incident.

The exhibit was received into evidence during the testimony of Hickory Police Detective Larry Wiles, who met Officer Rhyne and Yandle in the mall parking lot immediately after the theft was reported and investigated the case for several weeks thereafter. Defendant contends that the report was inadmissible because Officer Wiles did not make it and because it contained hearsay upon hearsay. We disagree for several reasons. First, though Officer Wiles did not make the report, he was there when Yandle was interviewed, the car was examined, the burglar alarm system tested, and the sample case that Yandle had left was examined, and testified: "What is on that report is exactly what I heard." Second, the exhibit did not violate the hearsay rule because it was not received as evidence that the statements contained therein

were true. G.S. 8C-1, Rule 801, N.C. Evidence Code. It was received, so the court instructed the jury, "for the limited purpose of simply showing that a report was made," which is an appropriate purpose under the law, not forbidden by the hearsay rule. For our Supreme Court has said: "The hearsay rule does not apply to testimony that a particular statement was made by some person other than the witness when the fact sought to be established is the making of the statement itself, as distinguished from the truth of the matter so stated." *Wilson v. Hartford Accident and Indemnity Co.*, 272 N.C. 183, 188, 158 S.E. 2d 1, 5 (1967). Furthermore, everything of consequence stated in the report was established by other testimony that defendant did not object to. That Yandle parked his car in the parking lot around 11 o'clock that morning and it then had four sample jewelry cases in the trunk is indicated by Mrs. White's testimony that she saw the four cases in the car trunk between 11 o'clock and 11:15. That the car was thereafter broken into and the cases stolen from it is indicated by Mrs. White's testimony that she saw a stranger hastily open the car trunk and remove one of the cases between 11 o'clock and 11:15; by the testimony of Detective Wiles that the cases were not there when he examined the car at 11:30; and by the testimony of plaintiff's general manager that "four cases had been stolen." Thus, even if the exhibit was incompetent, and we do not believe it was, its receipt cannot be regarded as prejudicial. *Wilson County Board of Education v. Lamm*, 276 N.C. 487, 173 S.E. 2d 281 (1970). Finally, as has been ruled by our Supreme Court under similar circumstances, Yandle's statement to the officer was also admissible as substantive evidence on other grounds. In *State v. Odom*, 316 N.C. 306, 341 S.E. 2d 332 (1986), the description of an abduction that was related to a police officer by an eyewitness ten minutes after he saw it was received as substantive evidence as a present sense impression exception to the hearsay rule, as provided in N.C. Evidence Rule 803(1), though the witness had died during the interim. In this case Yandle's statement concerning his detection of the theft of the jewelry cases was made within two or three minutes of the discovery. Too, evidence having been offered that Yandle was so upset by the theft that he was scarcely able to talk for a long while and even became ill, his statement to the officers could have been received also as substantive evidence under the excited utterance exception to the hearsay rule, as provided in Rule 803(2).

[3]    The other exhibit that defendant objected to—Plaintiff's Exhibit 7—purports to list all the articles of jewelry that were stolen and their wholesale prices, which amount to $59,488.31 altogether. The objection has no legal basis and other evidence to the same effect was introduced without objection in any event. The basis first stated for the objection was that the list was made "after the incident and it is clearly marked 2/25/80." This is no basis at all, of course, since a list of the stolen articles could not have been made before the theft occurred, and no argument to the contrary is made in the brief. The basis next stated for the objection—after plaintiff's counsel stated the exhibit was being introduced only to illustrate the testimony of plaintiff's general manager—was that "it is not relevant." Yet the exhibit purports to identify each piece of jewelry that was stolen and state its wholesale value or price, information that was not only relevant but material to the issues being tried. Nor is this basis for excluding the evidence pursued in defendant's brief. What is contended, for the first time, is that no proper foundation was laid for the exhibit and that it was not properly authenticated. Even if those had been the stated bases for the objection in the trial court, the contention has no merit. According to the evidence the list was prepared by the witness Linda Daniels after checking the jewelry samples Yandle had left after the theft against a list of the articles that were given to him earlier. She testified, in substance, that: For several years she had organized and selected the sample lines given to each salesman; each article that she gave to a salesman was listed with its wholesale price and he was held accountable therefor; when the line was turned in at the end of the sales season each article returned was checked against that record; when the sample line Yandle had in February 1980 was given to him in June 1979, she listed each article and its wholesale price; and when Yandle returned to the office following the robbery, she checked the jewelry samples that he still had against the list of articles given to him the preceding June and thereafter and Plaintiff's Exhibit 7 was the result. There was also evidence that Yandle meticulously safeguarded the jewelry samples given to him and that during his long career as a jewelry salesman he failed to retain and turn in from the jewelry entrusted to him only one tray, which a store customer stole twenty years earlier while Yandle was showing his other wares to the store owner. This is certainly foundation and authentication enough for the ex-

hibit to be received as evidence. Despite rhetoric to the contrary defendant's arguments all go to the weight of this exhibit, rather than its admissibility. One weakness that defendant argues invalidates the exhibit is that while Mrs. Daniels filled each sample case that she gave Yandle with articles made by the same jewelry manufacturer, he thereafter rearranged the cases by putting articles that were similar to each other together although made by different manufacturers. But this practice only rendered the accountability process more cumbersome; it did not render it unreliable, as the same process was used with absolute accuracy on many previous occasions, according to the evidence. Another weakness strongly relied on by defendant is that the list Mrs. Daniels testified that she made when delivering the jewelry to Yandle in June 1979, and used February 25, 1980 in preparing Exhibit 7, was not to be found when she testified in court five years later. While the absence of the master list could have caused the jury to doubt there ever was such a list or that Mrs. Daniels accurately checked against it when Yandle's remaining samples were turned in after the theft, Mrs. Daniels' testimony that she made the master list and used it properly in compiling Exhibit 7 was for the jury to assess, not us. And as was the case with the other exhibit, no prejudice resulted to defendant in any event, since evidence to the same effect was introduced without defendant objecting thereto. Mr. Ashendorf testified:

> Plaintiff's Exhibit 7 is a list of the merchandise which was determined to have been missing from the cases that Mr. Yandle brought back from the entire line. . . . The total amount of the cost of the missing items is calculated here, $59,488.31.

And Mrs. Daniels testified:

> Plaintiff's Exhibit 7 is a list that I made of the items missing from Paul Yandle's sample line at the time of the robbery. It is in my handwriting. I made this total. . . . The total amount according to the wholesale prices that was missing was $59,488.31, and I calculated that amount myself.

[4] In gist, the basis for defendant's contention that the above stated evidence has no tendency to show that plaintiff suffered any damages at all by the theft of its jewelry, and that a directed verdict or judgment notwithstanding the verdict should have

been entered for that reason, is that the words "fair market value" are not contained therein. But while "fair market value" is the legal measure of damages in suits for lost or destroyed personal property, *Kaplan v. City of Winston-Salem*, 286 N.C. 80, 209 S.E. 2d 743, *reh. denied*, 286 N.C. 548, --- S.E. 2d --- (1974), it is not the law, as defendant maintains, that evidence not couched in the terminology of fair market value is necessarily without effect in proving such damages. The fair market value of personal property can be deduced from a variety of other evidence, including the price paid or received for the same or similar property, if the time is not too remote and the circumstances indicate that neither party was under compulsion to buy or sell.

> Voluntary sales of similar property, in the same locality and reasonably near in point of time to the date in question, and the prices at which such sales were made, are generally held admissible to prove the market value of personalty, provided the sales are comparable, and under similar terms and conditions.

32 C.J.S. *Evidence* Sec. 593(5) (1964). Indeed, we have it on ancient and impeccable authority that under appropriate circumstances the price paid is fair market value evidence of the highest kind, stronger even than an opinion deliberately expressed. In *Boggan v. Horne*, 97 N.C. 268, 270, 2 S.E. 224 (1887), the court said as to defendant testifying that he paid $75 for the horse involved:

> [W]e may consider that as an *estimate* of value and but an opinion expressed. The actual purchase at the price is an act done in pursuance of an opinion and imparts greater force to it. (Emphasis in original.)

We note that in printing the above the North Carolina Reports (but not the Southeastern Reporter) uses the word *not* in place of *but*—which is a mistake as the rest of the quotation indicates and the original handwritten opinion in the State Archives Library plainly shows. Still earlier, the Court held that:

> The price given by the purchaser, and that for which he sold it, do not, conclusively, fix the amount of damages. But it is competent as *some* evidence of the value of the property at the respective times of the purchase and the sale, and as such the jury had a right to have it.

*Small v. Pool*, 30 N.C. 47, 48 (1847). (Emphasis theirs.)

Thus, under the peculiar circumstances of this case the wholesale price of the stolen articles as stated on the exhibit and testified to by Mr. Ashendorf and Mrs. Daniels can be fairly regarded as the informed, experienced opinion of the witnesses that the prices established were also the fair market value of the articles involved. How could it be regarded otherwise, since plaintiff was in the business of selling the articles at wholesale and Mr. Ashendorf and Mrs. Daniels had selected and priced them for sale in the wholesale market? Another reason that the wholesale price of the articles was evidence of their fair market value is that, according to the evidence, the articles involved were regularly and routinely sold at that price in the free marketplace, the ultimate proof of value, it would seem, manifestly superior to the other proofs approved by the law, such as opinion testimony and market quotations.

No error.

Judge JOHNSON concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

I cannot agree with the majority that the evidence in the record is sufficient to support the verdict that plaintiff was damaged in the sum of $59,488.31. The only evidence in this record as to the value of the stolen jewelry comes from the list prepared by Ms. Daniels. Mr. Ashendorf testified that the value of the items stolen was calculated based on a list of the wholesale values which he had prepared eight months before the loss. It must be remembered that the plaintiff sold the jewelry at wholesale. It is clear that Mr. Ashendorf's figure of $59,488.31 included the price for which the plaintiff had purchased the jewelry plus a reasonable profit. The burden is on the plaintiff to establish the amount of damage it sustained because of the loss of the jewelry due to the negligence of defendants. Since the measure of damages is the fair market value of the jewelry stolen, it does not seem unreasonable to require plaintiff to offer evidence of the fair market value of the jewelry stolen. While the testimony of Mr.

Ashendorf may be *some* evidence of the value, I am not satisfied that this evidence alone is sufficient to support the verdict, and this is especially true, in this case, where the judge's instructions to the jury with respect to damages are so inadequate as to afford the jury no guidance whatsoever in answering the issue as to damages. Indeed, the court did not even instruct the jury that plaintiff was entitled to recover only the fair market value of the jewelry if it determined that plaintiff was entitled to recover. I realize that defendant did not object at trial to the instructions, as required by Rule 10 of the Rules of Appellate Procedure. I also realize that the erroneous and prejudicial instructions as to damages did not afford defendant a fair trial on this issue and could very well have led to a miscarriage of justice because of the lack of definitive evidence as to the fair market value of the jewelry stolen. I vote to award defendant a new trial on the issue of damages alone.