## MILLISON ET AL. *v.* ADES OF LEXINGTON, INC.

[No. 426, September Term, 1970.]

*Decided June 2, 1971.*

320

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*James P. Salmon,* with whom were *Charles E. Channing, Sasscer, Clagett, Channing & Bucher* and *Charles A. Norris* on the brief, for appellants.

*Paul J. Bailey,* with whom were *Joseph D. Weiner, Wallace Luchs, Jr.,* and *King & Nordlinger* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Appellee in this case, Ades of Lexington, Inc. (Ades), is a tenant of appellant Patuxent Development Co. (Patuxent), of which appellant J. Laurence Millison (Millison) is president. Patuxent owns a shopping center at Lexington Park in St. Mary's County.[1]

---

1. For an account of an earlier battle between the parties *see* Patuxent v. Ades of Lexington, 257 Md. 398, 263 A. 2d 584 (1970). An indication of the feeling between the parties may be derived from the footnote at page 400.

Ades sued Millison and Patuxent. The declaration stated that there was a lease between Ades and Patuxent dated May 16, 1961, that Ades had paid all rent and otherwise complied with the provisions of the lease, and that there was an implied covenant that so long as it paid the rent and performed the covenants it was entitled to peaceably occupy the premises, have Patuxent perform its covenants, and have Patuxent refrain from interfering with its tenant. Ades then said that "since the first day of January, 1969," Patuxent and Millison had "molested, disturbed and interfered with possession and enjoyment of said premises on the part of [Ades] and deliberately harassed [Ades], its officers, agents and employees", that Millison and Patuxent had "willfully, deliberately, purposefully, maliciously and intentionally failed to make the necessary repairs to the building as required by the lease although they were requested to do so on numerous occasions by [Ades]", and that "as a direct result of their failure to make the necessary repairs as required by the lease, the building leaked, and [Ades'] goods were damaged and destroyed because of [their] failure to make the necessary repairs to the said building."

This action was filed on November 10, 1969. The defendants were summoned to the December return day, which was December 1. Under Maryland Rule 307 a the defendants' initial pleading should have been filed within 15 days after the return day. On December 18 Ades filed a motion for default judgment pursuant to Rule 310 b. On the same day default judgment was entered in favor of Ades against Millison and Patuxent. On December 19 a demurrer to Ades' declaration was filed by Millison and Patuxent, but not by their present counsel. The matter came on for hearing on July 20, 1970, at which time Millison and Patuxent moved to set aside Ades' judgment by default. With the consent of Ades this motion was made orally in open court, followed up by a written motion. The motion was overruled and ultimately a jury returned a verdict against Millison and

Patuxent in favor of Ades in the amount of $33,416.59.

We shall remand this case for a new trial since we conclude that the trial judge erred in his conception of the measure of damages. Three of the questions presented by Millison and Patuxent revolve around this point. The fourth question concerns an alleged abuse of discretion when the trial judge declined to grant a motion for a continuance made on behalf of Millison and Patuxent. Since we conclude that there was error making it necessary to remand the case for a new trial, it is unnecessary for us to decide this latter point.

The lease in question provided in part:

"8. Except as hereinafter set forth [Ades] will make any and all repairs to the premises hereby leased during the term of this lease, except structural repairs and repairs to the roof and exterior plumbing which [Patuxent] agrees to make."

It was filed with the declaration as an exhibit.

Ades presented as a witness Maurice Berger, its vice-president. Through him there were placed in evidence five exhibits which were said to be a compilation of the value of merchandise damaged on each of the days in question as the result of Patuxent's leaky roof. Berger said that in each instance the prices for the various items of merchandise reflected on the list were the retail selling prices as of the date of damage. Upon this basis counsel for Millison and Patuxent unsuccessfully moved that the testimony and exhibits be stricken from the evidence. The motion was made immediately after the court propounded to Berger the question:

"Do I understand you to say that the prices you used on these lists represent your markings of the actual market value to the public in your store as of the day the loss occurred?"

which question was answered in the affirmative.

At no time did Berger, the only witness as to value,

present to the jury evidence as to any value other than retail selling price. The jury's verdict equaled the sum of these retail prices plus certain items to which reference was made as to labor expenses less the few dollars testified to as having been obtained by way of salvage.

The trial judge instructed the jury that the measure of damages was "the fair market value of the goods on the date they were destroyed or lost by virtue of this rain damage or water damage", in addition to the cost of labor occasioned by the loss, less "any salvage value they recovered on the sale of these goods as salvage." Trial counsel for Millison and Patuxent excepted to the instructions on the ground that they did not represent the proper measure of damages.

In *Casualty Ins. Co. v. Messenger,* 181 Md. 295, 29 A. 2d 653 (1943), most recently quoted in *St. Paul at Chase Corp. v. Manufacturers Life Ins. Co.,* 262 Md. 192, 278 A. 2d 12 (1971), this Court said:

> "The damages allowed for breach of a contract should compensate the injured person for the loss he has sustained as a result of the breach. The court should endeavor to place the injured person, as far as possible by monetary award, in the position in which he would have been, if the contract had been properly performed." *Id.* at 301-02.

"The recovery must be in proportion to the kind or amount of interest which the injured party had in the property." *Oleck on Damages,* § 200 (rev. ed 1961).

It is obvious in this case that in the admission of evidence and in his instruction to the jury the trial judge equated "fair market value of the goods on the date they were destroyed or lost" with the retail selling price as of that date. This was an erroneous conclusion.

It is common knowledge that the stock in trade of some mercantile establishments will move much more quickly than the stock of other establishments and, indeed, certain items of the stock of any given establishment will

move much more quickly than other stock in the same establishment. Some stock may turn over within a matter of days or weeks while other stock remains for months or even years. Because of this the retail selling price will vary from time to time and even, as testified to here, from day to day. It undoubtedly is for this reason and in keeping with the rule we recited in *Casualty Ins. Co. v. Messenger, supra,* that the authorities from without the state do not adopt the retail selling price as the proper measure of damages for loss of a stock in trade.

In 1 *Sedgwick on Damages* (9th ed. 1912), the rule is stated:

> "§ *248a. Wholesale and retail value.*
>
> "When in the ordinary case a value is to be found for a single thing, the value is what that single thing would sell for; which amounts to the retail value of it. But when a court is dealing with a stock of goods held for sale, or even with a portion of such a stock, the value to be found is its value as a stock or part of a stock of goods, that is, its wholesale value, without the profit of resale which enters into the retail value; for at the time of valuation that profit has not yet been earned, or, to put the matter in another way, the process of distribution, which brings the goods into the hands of the consumer and thus gives them their final increment of value, has not yet taken place." *Id.* at 500-01.

In 4 *Sutherland on Damages* § 1098 (4th ed. Berryman 1916) it is said:

> "The retail price of property held for sale is not the standard by which its value is to be determined. Where a quantity of merchandise is sued for, the retail price would be unjust, for the merchant in fixing that price takes into consideration not only the first cost of the goods,

but store rent, clerk hire, insurance, and probable amount of bad debts, and adds to all these a percentage of profit. This must be understood of a considerable quantity, not of a single article. The owner must be entitled to recover at such rate as he would have to pay in the nearest market where a like quantity could be bought to replace the property taken; added to this, no doubt, should be the expense necessarily incurred in getting the property so purchased to the place where the trespass was committed. This would make the damages depend upon the value of the property taken at the place where the wrong was done. The rule is thus expressed in some cases, with the addition that the estimate is to be made as of the time the right of action accrued, and compensation for the time required to obtain other property to replace that destroyed." *Id.* at 4178-79.

In *Whaley v. Crutchfield,* 226 Ark. 921, 294 S.W.2d 775 (1956), cited as a footnote in 25 C.J.S. *Damages* § 83, at 910 (1966) there was an automobile collision. The plaintiff was an automobile dealer. The issue presented was the measure of damages for loss of his car. The court said:

"Ordinarily, the measure of damages is the retail market value of the property immediately before the damage occurs, and immediately thereafter. * * * But, that rule does not apply where the property involved is part of a stock in trade of a business concern. [Citing 1 *Sedgwick on Damages, op cit., Blaul & Sons v. Wandel,* 137 Iowa 301, 114 N. W. 899 (1908), and *Gen. Fire Ext. Co. v. Beal-Doyle D. G. Co.,* 110 Ark. 49, 160 S. W. 889 (1913)]." *Id.* at 925-26.
* * *
"In these circumstances, the measure of damages is the difference between the wholesale

market value of the car immediately after the collision and the wholesale value, plus delivery charges, immediately before the damage occurred." *Id.* at 927.

Similar holdings are to be found in *Dubiner's Bootery, Inc. v. General Outdoor Adv. Co.,* 200 N.Y.S.2d 757, 10 A.D.2d 923 (1960) ; *Cassin v. Marshall,* 18 Cal. 689 (1861) ; *Cunningham v. Sugar,* 9 N. M. 105, 49 P. 910 (1897) ; and *Sears v. Lydon,* 5 Idaho 358, 49 P. 122 (1897). The precise question here involved has not previously been before this Court. Our holdings in, for instance, *Weishaar v. Canestrale,* 241 Md. 676, 217 A. 2d 525 (1966), and *Taylor v. King,* 241 Md. 50, 213 A. 2d 504 (1965), as to the measure of damages for destruction or damage of chattels are not inconsistent with those authorities. In *Evans v. Murphy,* 87 Md. 498, 40 A. 109 (1898), our predecessors did have before them a case involving loss of stock in trade and the owner was held entitled to recover the fair market value of the goods, but the term was not defined. *Cf. Maryland Lumber Co. v. White,* 205 Md. 180, 197-198, 107 A. 2d 73 (1954), where recovery of loss of profits on resale was permitted for the conversion of a carload of lumber when it was impossible for the claimant to replace the merchandise under then existing market conditions in order to make delivery to its customers.

A holding that the proper value in the hands of Ades was the retail price of the goods on the date of loss when, presumably, Ades could have gone into the market place on that date and acquired like goods for a lesser price would place Ades in the position of being able to profit by the loss. In the normal course of events goods would be held on the shelf for weeks or even months before sale. In computing profits on those items Ades would include in its costs not only the purchase price of the goods sold, but also normal overhead such as rent, labor, and insurance. The recovery of the retail price of the goods on the day of the loss has the same effect as a sale of

all those goods—without the necessity of incurring normal overhead costs. This accelerated profit should not be permitted and the trial judge erred. If one were to consider this as a claim for lost profits, then, without more, the proof would be conjectural and speculative and in line with the comments of Chief Judge McSherry in *Lanahan v. Heaver*, 79 Md. 413, 422-23, 29 A. 1036 (1894), where a claim for lost profits was rejected.

Ades is entitled to recover the reasonable cost of replacing the goods on the shelf. This reasonable cost would include the wholesale cost at the time of the loss, plus any reasonable transportation charges that might be involved and the reasonable value of the labor involved in placing the goods on the shelf. Also involved in the claim of Ades which it would be entitled to recover would be the reasonable value of the labor involved in tabulating the loss and removing the damaged merchandise. There was an intimation that immediately prior to the loss certain of the goods were not readily saleable. In the case of any such goods the fair valuation would be required to take into account the extent of depreciation thus involved. On the retrial of damages Ades must spell out with some particularity the net salvage value of the goods after the loss which will be properly deductible from the value otherwise determined. It must also spell out its efforts to mitigate damages. We do not state these criteria as an exclusive measure of damages, but as guidelines to assist the parties and the trial court at the new trial on the issue of damages.

Patuxent and Millison urge that the damages proven were not connected in the testimony with the loss. From our reading of the record it was implicit in Berger's testimony that the water damage sustained by Ades' goods resulted from Patuxent's leaky roof.

Yet another clause in the lease was:

> "10. All goods and personal property of every kind, in and upon the said leased premises, shall be at the sole risk and hazard of [Ades], or

those claiming by, through or under it, or the owner thereof."

Millison and Patuxent in their appeal urge that this clause should constitute a bar to collection by Ades, a point not raised in the trial court. As we see it, the time for that point to be raised was prior to the entry of the judgment by default.

A judgment by default, while it may require extension by way of proof of damages, Rule 648, is still final in respect of the question of the liability of the party against whom it is obtained. *Himes v. Day,* 254 Md. 197, 206, 254 A. 2d 181 (1969) ; *Smith v. Dolan,* 170 Md. 654, 657, 185 A. 453 (1936) ; *Loney v. Bailey,* 43 Md. 10, 15 (1875) ; *Green v. Hamilton,* 16 Md. 317, 329 (1860) ; and 2 Poe, *Pleading and Practice* § 372 (5th ed. Tiffany 1925). "Like every other judgment, it is conclusive of every fact necessary to uphold it. *Freeman on Judgments,* sec. 330 * * *." *Heyward v. Sanner,* 86 Md. 19, 21, 37 A. 798 (1897). This Court cannot go behind the judgment by default to examine into and determine upon the validity of the cause of action upon which suit is instituted, *Stansbury v. Keady,* 29 Md. 361, 368 (1868), and any testimony offered to contradict liability is inadmissible, *Betz v. Welty,* 116 Md. 190, 195, 81 A. 382 (1911). Poe notes in 2 Poe § 369 relative to inquisition :

"Whether a defendant against whom a judgment by default has been entered in an action upon a written instrument will be permitted, upon the hearing of the inquisition, to offer evidence to show that the instrument sued on is a forgery, and thus reduce the plaintiff's recovery to nominal damages, does not appear to have been decided. Strictly and logically, such testimony would contradict the fact established by the judgment, and the opinion is hazarded that it would be held inadmissible." *Id.* at 354.

Millison and Patuxent by failing to plead within the

required time and thus permitting judgment by default on the issue of liability to be entered against them are now foreclosed from contesting their liability when inquiry is being made into the amount of damages and, therefore, may not now present this exculpatory clause as a bar.

> *Judgment as to liability affirmed; judgment as to damages reversed and case remanded for a new trial on the issue of damages; appellee to pay the costs in this Court.*