503 A.2d 1365

**CHROMACOLOUR LABS, INC.**

v.

**SNIDER BROS. PROPERTY MANAGEMENT, INC.**

**No. 626, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 7, 1986.

322

Robert A. Meier, Jr., Damascus, for appellant.

William H. Clarke (Galiher, Clarke & Galiher and W. Barry Wraga, on brief), Rockville, for appellee.

Argued before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

This appeal presents us with a complex set of facts upon which to examine the application of the bulk transfer rules, embodied in Md.Comm.Law Code Ann., § 6–101 *et seq.*, and the laws of garnishment.

On February 19, 1982, Chromacolour Labs, Inc. entered into an agreement with Maryland Color Photo, Inc. to purchase certain assets of Maryland Photo. In return for certain contract rights, accounts receivable and items of equipment, Chromacolour was to pay several debts of Maryland Photo amounting to $20,000. The particular debts were specified in the agreement. The appropriate officers of each corporation executed the agreement, although Maryland Photo's corporate charter had been revoked in October of the previous year.

Thereafter, Snider Bros. Property Management, Inc. filed suit against Chromacolour and Warren McCall, president of Maryland Photo, individually and as trustee of Maryland Photo. The two count complaint alleged: (1) rent due to Snider Bros. by Maryland Photo in the amount of $8,807; and (2) a fraudulent transfer of property between Maryland Photo and Chromacolour asserting that the latter corporation was merely the former corporation operating under a different name. Snider Bros. was not made aware of the agreement between the two businesses, nor was it listed as a creditor to be paid under the contract. Chromacolour cross-claimed against Maryland Photo and Warren McCall, individually and trading as Maryland Photo.

Snider Bros. obtained a default judgment solely against Warren McCall, individually and as trustee of Maryland Photo in the amount of $8,807, and thereafter served a Writ of Garnishment of Property upon Chromacolour. Chromacolour answered the garnishment stating that it was contractually bound to pay the third party creditors listed in the sales agreement (not parties to this case) and that the balance due these creditors exceeded the amount of Snider Bros.' judgment against Maryland Photo. Hence, there

were no funds left to pay Snider Bros. Snider Bros. sought a judgment on the garnishment which Chromacolour opposed.

The matter was heard in the Circuit Court for Montgomery County. After argument, memoranda were submitted wherein Snider Bros. for the first time claimed the Bulk Sales Act applied to the transfer of assets between Maryland Photo and Chromacolour. Snider Bros. argued that since it was not given notice of the sale as required by the Act, the transfer was ineffective as against it. The court agreed with both contentions and entered judgment against Chromacolour as garnishee for $8,807. Chromacolour appealed presenting three questions for our consideration:

"[D]oes the Bulk Sales Act apply to the transaction between Maryland Color Photo, Inc. and Chromacolour Labs, Inc."

"Does an attachment on property lie under the facts of this case."

"Assuming the Bulk Sales Act applies, may a money judgment be rendered thereunder."

## I. BULK TRANSFER

### A. Application

Chomacolour initially contends that Maryland's bulk transfer provisions do not apply to the transaction between it and Maryland Photo asserting that the principal business of the latter corporation was the sale of services, not merchandise. The record is devoid of sufficient evidence for us to agree or disagree. It is equally apparent that the trial court did not have sufficient information upon which to decide that issue. Accordingly, we must reverse and remand. We will explain.

Md.Comm.Law Code Ann., § 6–101, *et seq.*, sets out the procedure a business must follow when selling in bulk or when transferring a major part of its materials, supplies or merchandise, other than inventory, not in the ordinary

course of business.[1] The primary purpose of the bulk transfer provisions is to protect creditors against dishonest debtors surreptitiously selling their assets to bona fide purchasers and vanishing with the proceeds.[2] *Fico, Inc. v. Ghingher,* 287 Md. 150, 411 A.2d 430 (1980); *see* Lakin, "Bulk Transfers: What Hath the Uniform Commercial Code Wrought?" 35 MARYLAND LAW REVIEW 197 (1975). Transfers subject to the bulk sales provisions will be set aside as against unsuspecting creditors of the transferor unless the transferor complies with the notice provisions of the Code. Md.Comm.Law Code Ann., § 6–104(3), *supra.*

### —Section 6–102(3)—

Section 6–102(3) elucidates the types of enterprises subject to the Code. It provides in pertinent part:

"The enterprises subject to this title are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell ..."

Official Comment No. 2 to § 6–102(3) states:

"The businesses covered are defined in subsection (3). Notice that they do not include farming or contracting or professional services, nor such things as cleaning shops, barber shops, poolhalls, hotels, restaurants,[3] and the like whose principal business is the sale not of merchandise but of services. While some Bulk Sales risk exists in the

---

**1.** The Code defines a "bulk transfer" as: "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory ..." Md. Comm.Law Code Ann., § 6–102(1) (1975, 1985 Cum.Supp.). Section 6–102(2) provides that a "transfer of a substantial part of the equipment ... is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise." Md.Comm.Law Code Ann., § 6–102(2), *supra.*

**2.** A second purpose mentioned in the Official Comment to § 6–101 is to protect against the debtor selling to a friend at less than market value, paying off creditors less than he owes and then returning to the business through the back door at some future time. Md.Comm.Law Code Ann., § 6–101, *supra.*

**3.** The Code was amended in 1976 to include restaurants as a type of enterprise subject to the bulk transfer laws.

**326**

excluded businesses, they have in common the fact that unsecured credit is not commonly extended on the faith of a stock of merchandise."

Further, it has been held that "the primary thrust of the bulk transfer provisions of the U.C.C. is directed at enterprises whose principal business is the sale of merchandise from stock." *Macke Co. v. Pizza of Gaithersburg, Inc.* 259 Md. 479, 492–93, 270 A.2d 645 (1970).

The Code is silent as to how a determination should be made in ascertaining what is the principal business of an enterprise and what constitutes "services" as opposed to "merchandise." The task of the trial court was to determine whether the act of processing film was a service or instead amounted to the sale of merchandise, i.e., photographs and paper.

It could not perform this task, however, because it had no facts, other than mere pleading allegations of what was the principal business of Maryland Photo. The court did not have information about how Maryland Photo processed film, what constituted the inventory, if any, in its laboratory, whether it sold camera equipment or film, or similar facts. Without this data, the court had no facts available to test whether Maryland Photo was an enterprise subject to the bulk transfer rules under § 6–102(3).

In addition to the lack of evidence necessary to determine what was the principal business of Maryland Photo, the court could not possibly have determined whether Maryland Photo manufactured what it sold as contemplated by § 6–102(3). There was a dearth of facts on this issue as well.

**—Section 6–102(1), (2)—**

Even assuming that the transferor was a merchandising enterprise subject to the strictures of the Code, as the court must have done, there was no evidence of whether the sales agreement between the two corporations transferred a major part of the materials, supplies or other inventory under § 6–102(1), or a substantial part of the equipment made in connection with a bulk transfer of inventory under § 6–102(2).

The court made no finding of what constituted the major part of Maryland Photo's business, nor did it have any evidence before it besides the bare contract of sale, to support its conclusion that a "substantial part of the equipment and inventory of Maryland Color Photo, Inc., was transferred to the ... garnishee."

Consequently, we will remand this matter to the court for an evidentiary hearing to find: (1) whether Maryland Color Photo was a service industry exempt from the rubrics of the bulk transfer provisions under § 6–102(3); (2) if not, whether the exchange represented a major part of the materials, supplies or inventory of Maryland Photo under § 6–102(1); or (3) whether a substantial part of its equipment was transferred in connection with a bulk transfer of inventory under § 6–102(2).

### B.  Statute of Limitations

■■ Chromacolour posits that assuming the bulk transfer provisions apply, Snider Bros. failed to bring any action against it or Maryland Photo within six months from the date of transfer and is barred by limitations under Md. Comm.Law Code Ann., § 6–111, *supra*. Snider Bros. claims the transaction was concealed from it, and therefore, § 6–111 protects the delay in bringing suit. While we know the contract is dated February 19, 1982, the court made no finding as to whether the transaction was concealed. It only found that Snider Bros. was given no notice of the sale. There is a distinction between a concealment and failure to provide notice. We likewise remand this matter for a finding of the application *vel non* of limitations to the case at bar under § 6–111.

### II.  GARNISHMENT

■■ In the alternative, Snider Bros. argues that even if the bulk transfer provisions do not apply, garnishment[4] is

---

**4.** Attachment is the process of seizing money or property by summons or court order and bringing the same into custody of the court for the

proper in this case because Maryland Photo fraudulently transfered property to Chromacolour. Chromacolour retorts that the judgment of garnishment was improper because of the preexisting contract between Maryland Photo and itself, citing *Farley v. Colver*, 113 Md. 379, 77 A. 589 (1910).

■ The law is clear in this jurisdiction that "[g]arnishment cannot have the effect of changing the nature of a contract between the garnishee and the defendant, or of preventing the garnishee from performing a contract with a third person: any other doctrine would lead to mischievous results." *B. & O.R.R. Co. v. Wheeler*, 18 Md. 372, 379 (1862).

There are recognized exceptions to the general rule, however, such as where there has been a finding of fraud between the transferee and the judgment debtor. *Odend'hal v. Devlin*, 48 Md. 439 (1878).

■ Implicit in the court's ruling is the finding that the sales agreement was a valid contract. Snider Bros. does not challenge that finding in the briefs. Instead, it suggests that the averment of fraud was made by it against Warren McCall and Maryland Photo in Count I of its Declaration. Therein it was alleged:

"Thereafter, Maryland Color Photo, Inc. together with Warren McCall, the Corporate President, organized the Defendant, Chromacolour Lab, Inc. and turned over all of the assets and property of Maryland Color Photo, Inc. to the new corporation and in doing so defrauded the Plaintiff and other creditors of the Maryland Color Photo, Inc.

---

purpose of securing satisfaction of a judgment ultimately entered. Garnishment is a statutory proceeding whereby a person's money or property in possession of another are applied to payment of the former's debt to a third person.

"The said Chromacolour Lab, Inc. was organized with the view of taking and receiving the property as part of the plan for defrauding creditors of Maryland Color Photo, Inc. and in particular the Plaintiff herein."

Snider Bros. urges that these allegations were sustained by virtue of the judgment it obtained against Maryland Photo and Warren McCall in both capacities, albeit by default. It argues that a default judgment is "final and conclusive as to every fact necessary to uphold it," referring us to *Millison v. Ades of Lexington, Inc.*, 262 Md. 319, 277 A.2d 579 (1971).

Snider Bros'. exposition of the law is overbroad. In *Millison, supra,* where a default judgment was entered against both defendants, the Court of Appeals ruled that just as every judgment, a judgment of default is conclusive of every fact necessary to sustain it. However, *Millison* noted that its effect goes only to "the question of the *liability* of the party against whom it is obtained." *Id.* at 328, 277 A.2d 579. (Emphasis added) In the case at bar, there is no question that the allegations of fraud in the Declaration are conclusive concerning Maryland Photo and Warren McCall.

The issue for us is whether the facts underlying the default judgment are conclusive as to another party—Chromacolour. This precise question does not appear to have been decided in Maryland, but our search of the authorities in other jurisdictions indicates a negative answer. *See Dade County v. Lambert,* 334 So.2d 844 (Fla.App.1976); *Fawkes v. National Refining Co.,* 341 Mo. 630, 108 S.W.2d 7 (1937) *reh. den.,* 235 Mo.App. 433, 130 S.W.2d 684 (1939); *Cashway Lumber Co. v. Langston,* 479 P.2d 582 (Okl.1971); *Klimmer v. Klimmer,* 66 Mich.App. 310, 238 N.W.2d 586 (1976); *Peek v. Southern Guar. Ins. Co.,* 240 Ga. 498, 241 S.E.2d 210 (1978); *C.f. City Finance Co. v. Baldwin,* 326 Mich. 174, 40 N.W.2d 107, 109 (1949) (admissions of fraud in defendant's answer not binding on co-defendant). The failure of Maryland Photo and Warren McCall in his dual capacity to plead, resulting in a default against them,

cannot deprive Chromacolour of its right to present its defenses to the complaint. The default of one defendant, although an admission by it of the allegations in the complaint, does not operate as an admission of such allegations as against a contesting co-defendant even though the defendants may be inextricably joined.

The issue of fraud is one of fact. The court, however, did not reach the question of whether Chromacolour committed fraud in the transaction since it had previously determined the case on the bulk transfer issue. Since there is no finding of fraud in the exchange, we can go no further in our review. Rule 1085.

Accordingly, on remand if the court finds the bulk transfer provisions do not apply, the court must determine if the arrangement between Maryland Photo and Chromacolour was fraudulent on the part of Chromacolour.

### III. MONEY JUDGMENT

■ In light of our holding, we need not reach Chromacolour's final allegation of error. We do so, however, for the court's guidance on remand.

In the court's opinion, it stated that since the bulk transfer rules were violated, "[Snider Bros.] may attach the [equipment] being held by the Garnishee ..." and directed counsel for Snider Bros. to submit an order to that effect. The order signed by the court instead entered a money judgment against Chromacolour as garnishee for $8,807.00 —the full amount owed to Snider Bros. by the judgment debtor.

Chromacolour argues that an attachment of funds owed to third parties cannot be rendered on the facts of this case. It avers that if an attachment is to lie, it can only lie against property it holds for Maryland Photo and Warren McCall.

Rule 2–645 governs garnishment of property of the judgment debtor,[5] in the hands of a third person for the purpose of satisfying a money judgment. Subsection (j) of that Rule provides that "[a] judgment against the garnishee shall be limited to the value of the property of the judgment debtor established by the judgment creditor to be in the hands of the garnishee but not to exceed the amount owed under the creditor's judgment against the debtor and enforcement costs." In interpreting this part of the Rule, commentators have noted that "[w]henever a judgment is entered against the garnishee ... the amount is limited to the value of the property of the judgment debtor that is established to be in the hands of the garnishee, or to the amount of the underlying judgment together with enforcement costs, whichever sum is less." Niemeyer and Richards, *Maryland Rules Commentary,* Rule 2–645 Commentary (1984).

In the case *sub judice,* no effort was made by Snider Bros. to establish the value of the property in the hands of the garnishee. As it now stands, if Chromacolour were to sell the property it holds for the judgment debtors and that sale yielded an amount less than the judgment amount, it would be required to pay to Snider Bros. the balance. Rule 2–645(j) mitigates against this result. Accordingly, if on remand the court determines that the judgment of garnishment is valid, it is directed to enter an appropriate judgment in accordance with Rule 2–645(j).

In summation, on remand the court must hold a hearing to determine

(1) whether Maryland Photo was a merchandising enterprise subject to the bulk transfer rules, including whether it sold what it manufactured;

(2) assuming either, whether the agreement transferred a major part of Maryland Photo's materials, supplies, or other inventory or a substantial part of its equipment in connection with a bulk transfer of inventory;

---

**5.** Rule 2–645 does not cover wages or a partnership interest.

(3) if applicable, whether limitations under the bulk sales rules bar the action in this matter;

(4) assuming the bulk sales rules do not apply, whether Chromacolour committed a fraud in the transaction such that garnishment will lie;

(5) in the event that a judgment of garnishment is proper, the exact value of the judgment debtors' property in the hands of the garnishee.

JUDGMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS.

COSTS TO ABIDE THE RESULT.